UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JANE DOE,<br><br>   Plaintiff,<br><br>v.<br><br>GLENN YATES,<br><br>   Defendant. | Honorable<br><br>Case No.: 3:22-cv-02 |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. In January 2020, Plaintiff Jane Doe had just begun the second semester of her freshman year at her dream school, the University of Virginia. Ms. Doe was a very social young woman, known to be talkative and quick to laugh and joke around. Ms. Doe, a talented, academically successful collegiate athlete, was a member of the University of Virginia's Division I Women's Squash team, a sport she had played throughout high school.

2. But events on the night of January 26 and early morning hours of January 27, 2020 changed everything for Ms. Doe.

3. On the evening of January 26, 2020, Ms. Doe attended a celebratory party with her teammates and members of the Men's Squash team after a lengthy series of squash matches. Ms. Doe and others consumed alcohol at the party, and Ms. Doe became severely intoxicated. The party was relatively small and everyone present was aware of Ms. Doe's intoxicated state, which was obvious from her appearance and behavior.

1

4.      At one point in the night, Ms. Doe began to vomit. Other attendees helped Ms. Doe into bed, fully clothed, in one of the bedrooms at the apartment where the party had been hosted. Ms. Doe soon passed out. After ensuring that she had water and a nearby trashcan, Ms. Doe's friends left her to sleep, while the person who resided in the bedroom left the apartment to stay somewhere else and give Ms. Doe the space she needed to recover.

5.      Defendant Glenn Yates was a member of the Men's Squash team and had attended the party that evening. Defendant Yates knew that Ms. Doe was severely intoxicated: he had seen Ms. Doe throughout the night and observed the obvious and visible signs that she was extremely intoxicated; he had been told by Ms. Doe's friends that they were leaving her at the apartment to sleep because she was severely intoxicated; and he saw Ms. Doe passed out, with vomit in a nearby trashcan and on the bed, and unresponsive to his attempts to shake her awake.

6.      Defendant Yates took advantage of Ms. Doe's vulnerable and helpless state to sexually assault her multiple times. After seeing her passed out, knowing that she was unconscious as a result of extreme intoxication, and being fully aware that she was unable to consent, Defendant Yates forcibly and violently penetrated Ms. Doe's vagina with his penis in the early morning hours of January 27, 2020. Hours later, Ms. Doe awoke to Defendant Yates raping her again. By that time, Ms. Doe had sobered up enough to be aware of her surroundings, and immediately shouted "no" and "what the f***?" as she pushed Defendant Yates away from her and sought refuge in the locked bathroom, furiously texting her friends for help, until she heard Defendant Yates leave.

7.      Ms. Doe experienced severe vaginal pain and immediately sought medical treatment, where nurses discovered internal and external vaginal abrasions and bruising—signs

of a violent sexual assault. While in the hospital, Ms. Doe reported the assaults to the University of Virginia. After extensive investigation and hearings, Defendant was found responsible for sexually assaulting Ms. Doe twice and expelled from the University.

8. Ms. Doe seeks civil justice for the horrific violence Defendant inflicted upon her.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of a State and a citizen or subject of a foreign state.

10. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Ms. Doe's claims occurred in this judicial district.

11. Ms. Doe's claims are timely and fall within the statute of limitations set forth in Va. Code Ann. § 8.01-243(A).

12. Ms. Doe's claims are timely and fall within the statute of limitations set forth in Va. Code Ann. § 8.01-243(D) because Ms. Doe's claims result from sexual abuse occurring during her incapacity.

## PARTIES

13. Plaintiff Jane Doe[1] is a citizen and resident of Kings County, New York.

14. Upon information and belief, Defendant Glenn Yates is a citizen and resident of the Republic of South Africa.

---

[1] Ms. Doe files contemporaneously with this Complaint a Motion to Proceed Under Pseudonym.

## FACTUAL ALLEGATIONS

15. In January 2020, Ms. Doe was a freshman at the University of Virginia ("UVA") in Charlottesville, Virginia.

16. During the 2019–2020 academic year, Ms. Doe was a member of the UVA Division I Women's Squash team, performing well both academically and athletically.

17. During the 2019–2020 academic year, Defendant Yates was a sophomore at UVA and a member of the UVA Men's Squash team.

18. Prior to January 2020, Ms. Doe and Defendant Yates were acquaintances and teammates; they said "hello" when they saw each other but had never socialized together.

19. On Sunday, January 26, 2020, both the Men's and Women's Squash teams played matches against Columbia University. Ms. Doe won a hard-fought match against her opponent.

20. Late in the afternoon, Ms. Doe and her teammates received a GroupMe message about a party that evening to celebrate the matches, hosted at an apartment shared by several members of the Men's Squash team.

21. The apartment was located at a complex in Charlottesville called The Grove at the Corner.

22. Before attending the party, Ms. Doe and her female teammates met for food and drinks at Boylan Heights, a local burger and sports bar.

23. The Women's Squash team had recently completed a "dry period," during which the team had a number of matches and team members did not drink alcohol or attend parties.

24. Ms. Doe arrived at Boylan Heights at approximately 8:30 or 9:00 p.m.

25. During the first hour there, Ms. Doe consumed two Moscow mules—one "double" and one "single"—and two shots of alcohol.

26. Ms. Doe had eaten very little during the day and had burned a lot of calories during her squash match and, as a result, quickly became very intoxicated.

27. Ms. Doe considered herself drunk after her second Moscow mule, before she consumed the two additional shots of alcohol.

28. Ms. Doe's teammates noticed that Ms. Doe was visibly drunk, including that her cheeks were red, she was not in full control of her body, and was acting weird.

29. At approximately 10:00 or 10:30 p.m., Ms. Doe and her teammates left Boylan Heights and went to party at The Grove.

30. When Ms. Doe and her teammates arrived, the majority of the Men's Squash team was already present at the party.

31. Once she arrived at the party, Ms. Doe consumed more alcohol, including several beers and a couple of shots of vodka.

32. Ms. Doe also participated in a number of drinking games at the party.

33. By that time, Ms. Doe was extremely and visibly intoxicated, including stumbling and slurring her words.

34. Defendant Yates was also present at the party.

35. Ms. Doe interacted very little with Defendant Yates at the party and engaged in small talk with him only briefly and in passing.

36. At approximately 11:00 or 11:30 p.m., Defendant Yates gave a toast during which he improvised a song about the recent match and was described by witnesses as extremely coherent.

37. At approximately 1:00 a.m., Defendant Yates left the party with several other attendees and went to the nearby apartment of a member of the Women's Squash team ("Teammate A").

38. Shortly after they arrived, Teammate A asked her visitors to leave because she wanted to go to bed.

39. When Teammate A went to her room to go to sleep, she discovered Defendant Yates in her bed, under the covers.

40. Teammate A told Defendant Yates to get out of her room, but he initially refused and eventually left only after Teammate A and her roommate ("Teammate B") physically dragged him out of the room.

41. Teammate A instructed the visitors, including Defendant Yates, to leave immediately, and the group left the apartment and returned to The Grove.

42. Back at The Grove, the party wound down and Ms. Doe went upstairs with one of the male residents ("Male Resident A") of the apartment.

43. Ms. Doe and Male Resident A had been "making out" downstairs, and he invited her to go upstairs to continue kissing.

44. Almost immediately after they went into Male Resident A's bedroom, Ms. Doe felt dizzy, nauseated, and like she was about to throw up.

45. Ms. Doe communicated to Male Resident A that she was too intoxicated to continue making out and needed to throw up.

46. Male Resident A and Ms. Doe stopped kissing immediately, and Male Resident A helped Ms. Doe to the bathroom where she threw up several times.

47. Male Resident A helped Ms. Doe by holding her hair while she threw up and, when she finished, by helping her to the bed, placing a trash can next to her, getting her water, and calling Teammates A and B on the phone for help.

48. Ms. Doe was unable to walk by herself from the bathroom to the bed.

49. Ms. Doe fell asleep in Male Resident A's bed, fully dressed.

50. During that time, another male resident ("Male Resident B") helped care for Ms. Doe, making sure that she was sleeping on her side and near the trashcan in case she needed to throw up again.

51. When Teammates A and B arrived back at The Grove at approximately 2:00 a.m. to care for Ms. Doe, Defendant Yates was present in the living room of the apartment.

52. Teammates A and B went upstairs to care for Ms. Doe.

53. At that point, Ms. Doe was lying in Male Resident A's bed, visibly drunk, sweating, and hanging over the side of the bed toward the trashcan.

54. Teammates A and B tried to get Ms. Doe to drink some water and eat some Goldfish crackers, but Ms. Doe was so intoxicated that she drooled the water out of her mouth and could not keep the Goldfish crackers in her mouth.

55. Ms. Doe was so intoxicated that she could not hold her head up by herself and Teammate B had to support her head while trying to encourage her to drink water.

56. Teammates A and B tried to talk to Ms. Doe, but she was unaware of what was happening and could only mumble that she felt sick.

57. Teammate B, who was sober, repeatedly tried to get Ms. Doe out of the bed to drive her home.

58. Ms. Doe was unable to get out of the bed and eventually told Teammates A and B that she could not move and needed to sleep.

59. Teammates A and B determined that the safest option for Ms. Doe was not to try to move her to a different location.

60. Both Teammates A and B stayed with Ms. Doe while she fell asleep to ensure that she would remain on her side and would not be at risk of asphyxiating on her own vomit.

61. During this time, Defendant Yates was downstairs with several members of the Men's Squash team, including Male Resident A.

62. The group of men was discussing Defendant Yates's behavior on the squash court and recent struggles with his playing performance and the conversation became heated.

63. Teammate A eventually texted Male Resident A to tell him that Ms. Doe needed to stay in Male Resident A's bed to sleep.

64. When Teammates A and B eventually went back downstairs, Teammate A explained to the four men who were still at the apartment—including Defendant Yates—that they were going to leave Ms. Doe upstairs to sleep because she was really drunk.

65.  According to the other men present, it was obvious to everyone what state Ms. Doe was in, both from having seen her at the party and from her friends' statements.

66. Teammate A left the apartment and Teammate B stayed with Ms. Doe for another 15 minutes in case she needed to throw up again.

67. When Teammate B left at approximately 2:30 a.m., she confirmed with a male guest ("Male Guest A") that she was leaving Ms. Doe upstairs, asked him to check on her, and let him know that she would be only five minutes away and for him to call her if she needed to come back.

68. After Teammate B left, Defendant Yates and Male Guest A went upstairs to look for a Juul in Male Resident A's bedroom, where Ms. Doe was sleeping.

69. Defendant Yates and Male Guest A saw Ms. Doe asleep in the bed with the trashcan next to her and noticed that she had vomited in the trashcan and on the side of the bed.

70. Defendant Yates and Male Guest A shook Ms. Doe to try to wake her up and make sure she was okay, but she did not wake up.

71. Both Defendant Yates and Male Guest A knew that Ms. Doe was blackout drunk.

72. Defendant Yates and Male Guest A returned downstairs and continued talking.

73. Despite living only two blocks away and being fully capable of walking home, Defendant Yates stayed at The Grove.

74. At one point, Defendant Yates claimed to have lost his keys, but Male Guest A saw the keys on the floor and handed them to Defendant Yates.

75. Defendant Yates eventually got up and started walking back upstairs.

76. Male Guest A followed him, believing he was going upstairs to talk to another male resident ("Male Resident C").

77. Halfway up the stairs, Defendant Yates stopped and asked Male Guest A what he was doing, to which Male Guest A responded that he was probably going to go home and go to bed.

78. Defendant Yates told Male Guest A that he should go home.

79. Male Guest A left at approximately 3:30 a.m., and Defendant Yates continued upstairs.

80. Defendant Yates then went into Male Resident A's bedroom and vaginally penetrated Ms. Doe with his penis without consent, while she was unconscious.

81. Ms. Doe was in and out of consciousness several times during the rape.

82. The first time, Ms. Doe woke up face down on the bed, with her pants around her knees, and Defendant Yates aggressively penetrating her with his penis.

83. Ms. Doe tried to move but was unable to do so with Defendant Yates's body weight on top of her.

84. Ms. Doe was in pain from Defendant Yates penetrating her and cried out. Ms. Doe eventually lost consciousness again.

85. The second time Ms. Doe regained consciousness, Defendant Yates had turned her over onto her back and continued to vaginally penetrate her without consent while she was unconscious.

86. Ms. Doe continued to express the pain she felt by saying "ow," trying to move away, and making painful noises.

87. Ms. Doe was still too incapacitated to fight Defendant Yates off and could barely move.

88. Ms. Doe tried to get away from Defendant Yates, but he continued to penetrate her forcibly. Ms. Doe eventually lost consciousness again.

89. Ms. Doe woke up briefly the next morning when Male Resident A returned to his room at approximately 8:50 a.m. to collect what he needed to go to class.

90. Male Resident A observed Defendant Yates in the bed next to Ms. Doe and assumed that he had simply needed a place to sleep.

91. Male Resident A offered Ms. Doe a sip of water, which she took before she passed out again.

92. Before passing out again, Ms. Doe noticed that she naked from the waist down and had significant vaginal pain, but she was still drunk and fell asleep again.

93. The next time Ms. Doe woke up, Defendant Yates was raping her again.

94. This time, Ms. Doe was more sober and when she woke up to Defendant Yates vaginally penetrating her with his penis, she immediately said "no," and "what the f***?" but Defendant Yates did not stop raping her.

95. Ms. Doe was able to move away from Defendant Yates and push him off of her.

96. Ms. Doe jumped out of bed, grabbed her clothes, and ran to the bathroom and locked the door.

97. Ms. Doe hid in the bathroom until she heard Defendant Yates leave the apartment.

98. Ms. Doe immediately texted several friends and teammates telling them what Defendant Yates had done.

99. One of Ms. Doe's teammates ("Teammate C") immediately picked Ms. Doe up from The Grove and took her back to Teammate C's apartment.

100. Ms. Doe continued to experience severe vaginal pain throughout the morning.

101. Teammate C helped Ms. Doe, who was visibly in pain, by contacting a staff member from the Women's Squash team for help and driving her to the emergency room.

102. At the hospital, Ms. Doe underwent an extremely invasive and painful examination.

103. The examination revealed that Ms. Doe suffered both internal and external vaginal abrasions and bruising on her breast.

104. The nurses caring for Ms. Doe told her that her abrasions were really bad and it looked like what had happened to her was really violent.

105. While in the hospital, Ms. Doe reported the assault to UVA's Title IX office using an online reporting form.

106. Several weeks after the assault, and while the Title IX investigation was ongoing, Defendant Yates admitted to one of his friends that he knew how drunk Ms. Doe was, knew that she could not give consent, and saw that she was unconscious when he went into Male Resident A's bedroom, but had sex with her anyway.

107. Ms. Doe suffered greatly in the aftermath of the rapes, including experiencing significant anxiety, nightmares, and difficulty sleeping.

108. For weeks after the assault, Ms. Doe was unable to be alone. Ms. Doe stayed at her female Assistant Coach's home for weeks and her teammates took turns sleeping with her and holding her hand, just so she could fall asleep.

109. Ms. Doe missed weeks of classes immediately after the assault, both because she was unable to focus and because she was terrified of encountering Defendant Yates on campus.

110. As a result, Ms. Doe's GPA dropped and she withdrew from a class.

111. Ms. Doe also lost what had previously been her undefeated squash season.

112. Ms. Doe continued to travel with the Women's Squash team to further avoid being alone and because it was the only time she felt safe.

113. In the weeks after the assaults, Ms. Doe forfeited several matches because she was too exhausted from stress to play. In the matches she did play, Ms. Doe lost twice to players ranked far lower than she was ranked.

114. Five weeks after the assaults, Ms. Doe and all UVA students were sent home because of the newly emerging COVID-19 pandemic.

115. The isolation of attending school remotely was unbearable to Ms. Doe, who was overwhelmed and tortured by constant memories of Defendant Yates assaulting her.

116. As a direct result of her emotional distress, Ms. Doe developed a severe case of anorexia and lost 30 pounds, which in turn caused her to suffer from anemia and experience hair loss.

117. Ms. Doe's dramatic weight lost has made her ineligible to continue playing on UVA's Squash Team—a devastating outcome after Ms. Doe and her teammates lost an entire season due to the COVID-19 pandemic.

118. UVA's Title IX investigation and hearing process lasted nearly a year and produced extensive factual findings of outrageous misconduct and wrongdoing.

119. Pursuant to UVA's "Grievance Process for Investigating and Resolving Reports of Title IX Prohibited Conduct Under the Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence," Defendant Yates was not required to participate in the "Formal Resolution" process. UVA's Title IX and disciplinary processes are adopted by the Board of Governors and comply with all applicable principles of due process.

120. Defendant Yates voluntarily and fully submitted to and participated in the process, represented throughout by legal counsel and another advisor of his choosing.

121. UVA's Title IX process concluded after an extensive investigation, hearing, consideration of legal arguments, and appeal, with UVA finding Defendant Yates responsible for two instances of sexual assault and sexual harassment and expelled him from UVA.

### COUNT I
*Battery*

122. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

123. Defendant engaged in unwanted touching of Ms. Doe that was neither consented to, excused, nor justified.

124. Defendant engaged in unwanted touching when he, *inter alia*, penetrated Ms. Doe's vagina with his penis multiple times.

125. Ms. Doe did not consent to Defendant penetrating her vagina with his penis, nor was she capable of providing consent based on her extreme intoxication and incapacitation.

126. Ms. Doe was unable to, and did not, consent to Defendant penetrating her vagina with his penis because she was unconscious at the time.

127. Nothing excused nor justified Defendant's unwanted touching of Ms. Doe when he penetrated her vagina with his penis without her consent.

128. Defendant's unwanted touching was unwarranted by and ran afoul of social usages prevalent at the time.

129. Defendant's unwanted touching was objectively offensive and offended any reasonable sense of personal dignity.

130. Defendant's unwanted touching was done in a rude, insolent, and/or angry manner.

131. As a direct and proximate result of Defendant's unwanted and offensive touching, Plaintiff sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a. Past, present, and future physical and psychological pain, suffering and impairment;

    b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c. Impaired educational and professional capacity and earnings;

    d. Attorneys' fees and costs; and

e. Such other and further relief as this Court deems just and proper.

## COUNT II
### *Intentional Infliction of Emotional Distress*

132. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

133. Defendant's sexual misconduct was intentional or, in the alternative, reckless, and committed in conscious disregard for Ms. Doe's incapacitated, unconscious, and helpless state.

134. Defendant was aware of his conduct and acted with reckless indifference to the consequences of his conduct to Ms. Doe. Defendant was aware based on the existing circumstances and conditions that his conduct would probably result in injury to Ms. Doe.

135. Defendant's sexual misconduct against Plaintiff was outrageous, atrocious, and intolerable, and so extreme in degree that it went beyond all possible bounds of decency. Defendant's sexual misconduct was utterly intolerable in a civilized community.

136. Defendant's sexual misconduct against Plaintiff caused her to suffer extreme and severe emotional distress, including but not limited to fright, horror, grief, shame, humiliation, and anger, so extreme that no reasonable person could be expected to endure it. Sexual assault inherently meets the criteria of severe emotional distress pursuant to Virginia law.

137. As a direct and proximate result of Defendant's sexual misconduct, Plaintiff sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

   a. Past, present, and future physical and psychological pain, suffering and impairment;

   b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

   c. Impaired educational and professional capacity and earnings;

  d. Attorneys' fees and costs;

  e. Punitive damages as necessary and sufficient to deter Defendant from engaging in the same or similar behavior in the future; and

  f. Such other and further relief as this Court deems just and proper.

## COUNT III
### *Negligence and Negligent Infliction of Emotional Distress*

138. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

139. Defendant owed Plaintiff a duty to exercise ordinary care to avoid injuring Plaintiff as a consequence of his actions.

140. Defendant breached that duty by, *inter alia*, negligently failing to ascertain whether Ms. Doe was capable of, or did in fact, consent to sexual contact of any kind.

141. As a direct and proximate result of Defendant's negligence, Plaintiff suffered contemporaneous physical injury in the form of, *inter alia*, scratching, bruising, and vaginal trauma.

142. As a direct and proximate result of Defendant's negligence, Plaintiff suffered from emotional disturbance, including, *inter alia*, significant anxiety, nightmares, and difficulty sleeping.

143. As a direct and proximate result of Defendant's negligence and Plaintiff's subsequent emotional disturbance, Plaintiff suffered physical injury that differs from the symptoms or physical manifestation of emotional disturbance in the form of, *inter alia*, severe anorexia, anemia, and hair loss.

144. As a direct and proximate result of Defendant's sexual misconduct, Plaintiff sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a. Past, present, and future physical and psychological pain, suffering and impairment;

    b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c. Impaired educational and professional capacity and earnings;

    d. Attorneys' fees and costs; and

    e. Such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Doe prays the Court for judgment against Defendant Glenn Yates for an amount to be determined at trial for:

    a. compensatory damages of no less than $10,000,000 for Ms. Doe's past, present and future injuries and losses;

    b. punitive damages in the maximum amount allowable by law;

    c. costs of this suit, legal interest, and reasonable attorney's fees; and

    d. such other relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: January 12, 2022

| | |
|---|---|
| **THE FIERBERG NATIONAL LAW GROUP, PLLC** <br> Douglas E. Fierberg* <br> Chloe M. Neely* <br> 161 E. Front Street, Suite 200 <br> Traverse City, MI 49684 <br> Tel: (231) 933-0180 <br> Fax: (231) 252-8100 <br> dfierberg@tfnlgroup.com <br> cneely@tfnlgroup.com <br> (*Pro hac vice Admission Pending) <br> *Attorneys for Plaintiff Jane Doe* | **THE THOMSON LAW FIRM, PLLC** <br> By: /s/ Paul R. Thomson, III <br> Paul R. Thomson, III <br> Virginia Bar No. 38765 <br> 2721 Brambleton Avenue, SW <br> Roanoke, Virginia 24015 <br> Tel: (540) 777-4900 <br> Fax: (540) 772-0578 <br> paul@roanokeinjurylawyer.com <br> *Local Counsel* <br> *Attorney for Plaintiff Jane Doe* |